## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

SHELLY MYER,                          )
            Plaintiff,              )
                                    )
      v.                                  )          CAUSE NO.: 2:06-CV-00106-PRC
                                      )
MICHAEL J. ASTRUE,                    )
Commissioner of the Social Security   )
Administration,[1]                     )
              Defendant.              )

## OPINION and ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Shelly Myer on

March 22, 2006, and an Opening Brief of Plaintiff in Support of her Complaint [DE 14] (hereinafter,

"Plaintiff's Opening Brief"), filed by the Plaintiff on August 21, 2006.  The Plaintiff seeks judicial

review of a final decision of the Defendant, the Commissioner of the Social Security Administration

("the Commissioner"), in which she was denied Supplemental Security Income ("SSI") under Title

XVI of the Social Security Act.  For the following reasons, the Court denies the Plaintiff's request

to reverse and remand the decision of the Commissioner.

## PROCEDURAL BACKGROUND

On December 5, 2002, Plaintiff Shelly Myer applied for SSI, alleging a disability onset date

of May 19, 1999, stemming from a combination of physical and mental impairments including

herniated discs, asthma, hepatitis, a learning disability, a sleep disorder, and a thyroid condition.

Plaintiff's application was denied initially and again upon reconsideration and she filed a timely

request for a hearing before an Administrative Law Judge.  On July 13, 2005, Administrative Law

---

[1]On February 12, 2007, Michael J. Astrue became the Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d)(1) and the last sentence of 42 U.S.C. § 405(g), Michael J. Astrue is automatically substituted as the Defendant in this civil action.

Judge Paul R. Armstrong (hereinafter, "ALJ") presided over the hearing. Plaintiff appeared with counsel and testified. David V. Girzadas testified as a medical expert ("ME") and Thomas Grzesik testified as a vocational expert ("VE"). On July 27, 2005, the ALJ issued a decision, finding that, despite the limitations caused by Plaintiff's impairments, there were a significant number of jobs that the Plaintiff could perform and thus Plaintiff was not "disabled" as defined by the Act. The ALJ made the following findings:

(1)    The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

(2)    The claimant has the following combination of impairments, considered to be "severe" in accordance with the Social Security Act and Regulations: degenerative disc disease of the lumbar spine; status post L4-5 fusion; recent onset seizure disorder; mild chronic obstructive pulmonary disease (COPD); and headaches (20 CFR § 416.920(c)).

(3)    These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

(4)    The claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

(5)    The claimant has the following residual functional capacity: she can lift/carry 10 pounds frequently and 20 pounds occasionally, and sit, stand and/or walk at least 6 hours each during an 8-hour day. She cannot climb ropes, ladders or scaffolds, or sustain concentrated exposure to noxious fumes, odors, respiratory irritants, or extremes of temperature and humidity. Finally, she cannot work around dangerous moving machinery, unprotected heights, open flames or bodies of water.

(6)    The claimant is unable to perform any of her past relevant work (20 CFR § 416.965).

(7)     The claimant is a "younger individual between the ages of 18 and 44" (20 CFR § 416.963).

(8)     The claimant has a "high school education" (20 CFR § 416.964).

(9)     The claimant has no transferable skills from any past relevant work (20 CFR § 416.968).

(10)    The claimant has the residual functional capacity to perform a significant range of light work (20 CFR § 416.967).

(11)    Although the claimant's exertional limitations do not allow her to perform the full range of light work, using Medical-Vocational Rule 201.21 as a framework for decision-making, there are a significant number of jobs in the national economy that she could perform.  Examples of such jobs include work as a retail sales clerk (64,000 Regional jobs), a cashier (28,000 Regional jobs), and an order taker (4,000 Regional jobs).

(12)    The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 416.920(g)).

R. at 31-32.

On September 9, 2005, Plaintiff submitted arguments and requested that the Social Security Administration Appeals Council review the ALJ's decision.  On January 23, 2006, the Appeals Council denied Plaintiff's request for review, making the ALJ's July 27, 2005 decision the final decision of the Commissioner.

On March 22, 2006, Plaintiff filed a timely Complaint with this Court.  On August 21, 2006, Plaintiff filed Plaintiff's Opening Brief.  On December 13, 2006, the Commissioner filed a Memorandum in Support of the Commissioner's Decision ("Commissioner's Response"), and on December 18, 2006, Plaintiff filed Plaintiff's Reply to Commissioner's Memorandum.

Both parties have consented to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Thus, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636 and 42 U.S.C. § 405(g).

## FACTS

### I. Background

Plaintiff was born on December 26, 1961. At the time of the ALJ's decision, Plaintiff was forty-three (43) years old. Plaintiff has a high school education (GED) and has past relevant work experience as a waitress and a commercial cleaner.

### II. Medical evidence

Plaintiff has a history of back pain dating to a slip-and-fall accident in May 1999. A June 1999 CT scan of the lumbar spine at L4-5 revealed central disc herniation with moderate narrowing in the spinal canal and degenerative changes of facet joint and hypertrophy ligamentum flava.

In August 2002, Saint Margaret Mercy Healthcare Center in Hammond, Indiana, admitted the Plaintiff, complaining of alteration in mental status, hepatitis, and renal failure. She initially told Emergency Room staff that she had taken heroin along with Oxycontin, but later denied having used heroin in over a year. Plaintiff immediately responded to intravenous Narcan.[2] A physical examination revealed no neurological abnormalities. An MRI revealed a small, broad-based posterior disc herniation at L4-5 with some impingement on the thecal sac and neural foramen. The examining physician's impression as to pain was "chronic pain syndrome with spinal stenosis." R. at 261.

---

[2]Narcan is a medication used to prevent or reverse the effects of narcotic pain relievers.

On December 9, 2002, Plaintiff was examined for an initial patient evaluation at the Chicago Institute of Neurosurgery and Neuroresearch ("CINN") for complaints of low back pain radiating to both lower extremities. Plaintiff reported that her pain was constant, requiring her to stay in bed all day. An examination of the lower extremities (including straight leg raise as well as motor, sensory, and deep tendon reflexes) was normal.

On December 23, 2002, Brian McClenic, M.D., at the Pain Management Center at the Community Hospital in Munster, Indiana, examined the Plaintiff for complaints of low back pain with radiation to bilateral lower extremities. A clinical examination revealed full range of motion and no neurologic abnormality. Dr. McClenic assessed Plaintiff with lumbar disc herniation with lumbar radicular symptoms.

On January 29, 2003, at the request of the State Agency, Patrick McKian, Ph.D., a clinical psychologist, performed a consultative psychological examination of the Plaintiff. The Plaintiff reported that she had poor sleep, but that when she got up she was independent for her personal hygiene and performed household activities such as laundry, cooking, dusting, and vacuuming with a self-propelled vacuum. She had a boyfriend and went to movies for fun. She smoked two packs of cigarettes a day but denied any drug or alcohol use. She reported a poor appetite due to Hepatitis C and some medications. The Plaintiff told Dr. McKian that she was only applying for SSI because she was told she had to in order to keep Medicaid. While the Plaintiff appeared somewhat sad and anxious, Dr. McKian's mental status exam revealed unremarkable findings. Dr. McKian made the following diagnostic impressions and recommendations: Plaintiff appears to have an adjustment disorder as a result of her difficult life and with her present husband being in jail and her being afraid of retaliation from him should she divorce him as well as some symptoms of anxiety and

5

depression, which seem related to her life's situation.  Dr. McKian assigned the Plaintiff a GAF score of 52.[3]

In late February or early March 2003, at the request of the State Agency, R. Garcia, M.D., performed a consultative examination of the Plaintiff.  Dr. Garcia's impression was chronic low back pain (discogenic) and a history of Hepatitis C and asthma.

On April 14, 2003, the Plaintiff returned to CINN and a recent discogram[4] was markedly positive at L4-5 for the "reproduction of concordant pain."  R. at 282.  Dr. Levin discussed the option of surgery and informed the Plaintiff that "there was definitely no 100% guarantee regarding the outcome, and total pain relief."  R. at 282.  The Plaintiff chose surgery.

On May 28, 2003, Dr. Levin performed a lumbar interbody fusion at the L4-5 region of the back where rods and screws were placed bilaterally.  There were no surgical complications and the Plaintiff was discharged from the hospital in stable condition.

On May 29, 2003, an EEG was consistent with primary generalized epilepsy.

On May 30, 2003, the Plaintiff reported to a physical therapist that she felt the same as before the surgery.  The physical therapist reported no abnormalities in the extremities and observed that Plaintiff's balance for sitting was good and her balance for standing was fair.

On June 6, 2003, Plaintiff was admitted to the emergency room at Community Hospital for complaints of lethargy, nausea, and confusion over the past couple of days as well as back and leg

---

[3]A GAF of 51-60 is indicative of moderate 2 symptoms or moderate difficulty in social, occupational, or school functioning.  American Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 30-31 (4th ed. 1994).

[4]A discogram refers to the "graphic record, usually radiographic, of diskography."  Stedman's Medical Dictionary 550 (28th ed. 2006).

pain.  After a physical examination, the examining physician observed that the Plaintiff appeared lethargic and drowsy, and that her speech was "somewhat slurred."  R. at 285.

On or about November 5, 2003, post-operative x-rays revealed no abnormalities.

On or about December 12, 2003, Dr. Suresh Mahawar, a physician appointed by the Social Security Administration, performed a consultative examination of the Plaintiff.  At the time of the examination, Plaintiff complained of lower back pain worse than before the surgery and abdomen pain. She stated that she had been diagnosed with Hepatitis C.  Dr. Mahawar's examination revealed no musculoskeletal, neurological, or other physical abnormalities.  Dr. Mahawar observed that the Plaintiff walked with a normal gait.  He further observed that while the Plaintiff had no problem tandem walking, she had mild difficulty getting on and off the examination table as well as mild-to-moderate difficulty squatting and rising.  Dr. Mahawar's diagnostic impression was chronic low back pain with a history of fusion, abdomen pain with Hepatitis C, a history of asthma, and a history of epilepsy.

In terms of medication, the Plaintiff has treated her back pain primarily with MS Contin.[5] The record also documents Plaintiff's use of Xanax[6] since 1989, in order to treat anxiety, as well as Remeron[7] from 2002-04 and Elavil[8] in May of 2005, to treat depression.

---

[5]MS Contin is a medication used to relieve moderate to severe pain that requires strong, long-lasting narcotic pain medications for more than a few days.  *See* http://www.webmd.com.

[6]Xanax is the brand name for Alprazolam, which is used to treat anxiety and panic disorders.  It belongs to a class of medications called benzodiazepines which act on the brain and nerves to produce a calming effect.  *See* http://www.webmcdcom.

[7]Remeron is an antidepressant medication used to treat a variety of conditions, including depression and other mental/mood disorders.

[8]Elavil is an antidepressant medication used to treat a variety of conditions, including depression and other mental/mood disorders.  *See* http://www.webmd.com.

### III.    Plaintiff's testimony

Plaintiff testified that her daily activities were minimal.  Plaintiff testified that she could not do anything because of back pain, chronic obstructive pulmonary disease ("COPD"), and the lack of a car.  The Plaintiff testified that she stayed in bed in her room and watched television all day. She testified that her mother handled the chores such as cooking, except for use of the microwave, cleaning, and shopping.  The Plaintiff testified that did the laundry and dusted.

The Plaintiff testified that she could not stand or sit for any length of time.  She stated that she smoked about a pack of cigarettes a day. She estimated that she could walk half a block, but that her ability to walk was limited by back pain.  She testified that she did not use a cane.  She testified that she was losing weight due to continuous nausea and vomiting, for which she took Compazine. She also testified that she did not eat any food, but instead relied on Slim Fast or liquids.  The Plaintiff testified that she used an inhaler four times a day, which sometimes helped.  She testified that heat and humidity bothered her breathing.

The Plaintiff testified that her back seemed "okay" after fusion surgery, but then worsened. She testified that she had the same symptoms as before the surgery, including constant throbbing pain in her back and legs with numbness in her feet and legs.

The Plaintiff testified that she would have problems performing a job that required her to be on her feet all day.  Plaintiff testified that her medications "sometimes" caused drowsiness and dizziness.  The Plaintiff testified that she never received treatment for substance abuse and that her current treating physician was not aware of her past substance abuse.  She further testified that she did not see any doctor for her mental health.  Finally, she testified that she had migraine headaches twice a month, which were sometimes helped by medication.

IV.     **ME's testimony**

The ME, Daniel Girzadas, M.D., testified that there had been no neurological findings after Plaintiff's lumbar fusion surgery in May 2003.  He opined that Plaintiff's impairments did not meet or medically equal any Listing.  The ME further opined that the Plaintiff could do the following: lift 20 pounds occasionally and 10 pounds frequently; stand and walk six hours in an eight-hour day; sit six hours in an eight-hour day; use ramps or stairs occasionally; never use ladders, ropes, or scaffolds; occasionally balance, squat, stoop, crawl, and kneel; work in a clean atmosphere without exposure to excessive heat, cold, or humidity; and work in an environment without exposure to unprotected heights and hazardous moving machinery.  The ME indicated that Plaintiff's medical records did not document abdominal problems.  Finally, the ME testified that his opinion of Plaintiff's functional capacity factored into all of the information in the record.

V.      **VE's testimony**

The ALJ directed the VE to assume an individual who was limited to light exertion with the following restrictions: no climbing of ropes, ladders or scaffolds; occasional posturals (kneeling, crawling, bending, crouching, etc.); no concentrated exposure to noxious fumes, odors, respiratory irritants, or extremes of temperature and humidity; and no work at unprotected heights or around dangerous moving machinery, open flames, or bodies of water.  The VE responded that the hypothetical person could not perform Plaintiff's past relevant work, but could perform jobs existing in the national economy such as work as a retail sales clerk (64,000 jobs), a cashier (28,000 jobs), and an order picker (4,000 jobs), as well as sedentary jobs including work as an information clerk (4,500 jobs), a cashier (3,500 jobs), and an order clerk (3,000 jobs).

**E.     Decision of the ALJ**

Applying the five step sequential evaluation, the ALJ concluded that the Plaintiff was not disabled within the meaning of the Social Security Act.

At step one, the ALJ determined that the Plaintiff had not engaged in any substantial gainful activity since the alleged onset date of her disability.

At step two, the ALJ determined that the Plaintiff was physically impaired by reason of degenerative disc disease of the lumbar spine, status post L4-5 fusion, recent onset seizure disorder, mild chronic obstructive pulmonary disease ("COPD"), and headaches, and that these impairments, at least in combination, were "severe" in accordance with the SSA and Regulations.  In addition, while the ALJ noted Plaintiff's history of polysubstance abuse, the ALJ accepted her allegations that the condition was in a period of sustained remission and thus the ALJ would not consider that usage, or any transitory residuals associated therewith, in evaluation of her case.  As to Plaintiff's alleged mental impairments, the ALJ rejected the State Agency reviewer's conclusions that the Plaintiff has "severe" depressive and anxiety disorders NOS, with moderately limited activities of daily living and social functioning relating thereto.  Therefore, the ALJ found no evidence of a medically determinable mental impairment of any kind in the record.

At step three, the ALJ determined, relying on the ME's expert opinion as well as the conclusion of the State Agency medical consultant, that the Plaintiff does not meet or medically equal the criteria for any listed impairments appearing in Appendix 1, Subpart P, Regulations No. 4.

At step four, the ALJ undertook the task to determine whether the Plaintiff retained the RFC to perform the requirements of her past relevant work or other work existing in significant numbers

in the national economy.  The ALJ found that the Plaintiff was only partially credible.  The ALJ found that the Plaintiff retained the following RFC: she can lift/carry 10 pounds frequently and 20 pounds occasionally, and sit, stand, and/or walk at least 6 hours each during an 8-hour day; she cannot climb ropes, ladders, or scaffolds because of her back, or sustain concentrated exposure to noxious fumes, odors, respiratory irritants, or extremes of temperature and humidity because of COPD; and because of a history of seizure activity, she cannot work around dangerous moving machinery, unprotected heights, open flames, or bodies of water.  Based on the Plaintiff's RFC and relying on the testimony of the VE, the ALJ determined that the Plaintiff was unable to perform any of her past relevant work.

Finally, at step five, again based upon Plaintiff's RFC, the ALJ determined that she was capable of performing a significant range of light work as defined in 20 C.F.R. § 416.967.  Accordingly, based on the testimony of the VE, the ALJ determined that, considering the Plaintiff's age, educational background, past relevant work experience, and RFC as determined, the Plaintiff was capable of making a vocational adjustment to other work that exists in significant numbers in the national economy, such as work as a retail sales clerk (64,000 Regional jobs), a cashier (28,000 Regional jobs), and an order taker (4,000 Regional jobs).  The ALJ concluded that the Plaintiff was not "disabled" as defined in the SSA at any time through the date of the ALJ's Decision.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Thus, a court reviewing the findings of an ALJ will only reverse if the findings are not supported by substantial evidence or if the ALJ has applied an

erroneous legal standard. *See Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford*, 227 F.3d at 869; *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ's findings are supported by substantial evidence and under the correct legal standard. *See Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000). If an error of law is committed by the Commissioner, then the "court must reverse the decision regardless of the volume of evidence supporting the factual findings." *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

An ALJ must articulate, at a minimum, his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). The ALJ must build an "accurate and logical bridge from the evidence to his conclusion so that, as a reviewing court, we may assess the validity of the

agency's ultimate findings and afford a claimant meaningful judicial review." *Young v. Barnhart*, 362 F.3d 995, 995 (quoting *Scott*, 297 F.3d at 595); *see also Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999) (citing *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations.  The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  *See* 42 U.S.C. § 423(d)(1)(A).  To be found disabled, the claimant's impairment must not only prevent him from doing his previous work, but considering his age, education, and work experience, it must also prevent him from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy.  *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(e), (f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits.  *See* 20 C.F.R. § 404.1520(a)(4).  The steps are:

(1) Is the claimant engaged in substantial gainful activity?  If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to Step 2.

(2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to Step 3.

(3) Does the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to Step 4.

(4) Can the claimant do the claimant's past relevant work?  If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to Step 5.

(5) Can the claimant perform other work given the claimant's residual functional capacity, age, education, and experience?  If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled.  *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At the fourth and fifth steps, the ALJ must consider an assessment of the claimant's RFC. "The RFC is an assessment of what work-related activities the claimant can perform despite [his] limitations." *Young*, 362 F.3d at 1000.  The ALJ must assess the RFC based on all the relevant evidence of record. *Id*. at 1001 (citing 20 C.F.R. § 404.1545(a)(1)).  The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ.  *Id*. at 1000; *see also Zurawski*, 245 F.3d at 886; *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ARGUMENTS

The Plaintiff argues that the ALJ committed error by: (1) finding that Plaintiff's depression and anxiety disorders were not severe impairments; (2) failing to properly analyze Plaintiff's credibility; and (3) making several harmful defects at step five including unresolved inconsistencies about skill and the omission of Plaintiff's age and education level from the ALJ's hypothetical question as posed to the VE.  *See* Plaintiff's Opening Brief at 11.

## ANALYSIS

A.      **Step two**

The Plaintiff argues that the ALJ committed an error of law by finding that Plaintiff's depression and anxiety were not severe impairments.  The Plaintiff contends that the medical evidence of record does not support the ALJ's determination that there was "no evidence of a medically determinable mental impairment of any kind in the record."  R. at 28.  Specifically, the Plaintiff points to the following evidence: (1) Dr. McKian's diagnosis of an adjustment disorder with some anxiety and depressed symptoms and a GAF of 52; and (2) progress notes demonstrating the Plaintiff's use of Xanax.  In response, the Commissioner initially argues that because the ALJ's sequential analysis proceeded beyond step two, Plaintiff's argument is "not consequential." Commissioner's Response at 10.  Framing Plaintiff's argument as an RFC issue, the Commissioner then contends that the Plaintiff did not have any significant limitation in her ability to perform basic work-related activities as a result of any mental impairments.  In reply, the Plaintiff amends her argument, stating that the ALJ improperly discounted Plaintiff's alleged mental conditions of depression and anxiety and thus disregarded the limiting effects of mental impairments at steps four and five of the sequential evaluation.[9]

As a threshold point, the Court finds that because the ALJ concluded that at least one of Plaintiff's impairments were severe and thus proceeded with and completed the five-step sequential analysis, the ALJ's determination that other impairments were not severe can only amount to harmless error because the Plaintiff prevailed, in some form, at step two.  At step two, an ALJ

---

[9]The Plaintiff raises this specific argument (i.e., ALJ committed error by failing to consider mental impairments at steps four and five) for the first time in her reply brief.  While, under most circumstances, this argument would have been waived and the Court would have declined to address it, because the Commissioner specifically raised this argument in her response brief and the Plaintiff merely responds in her reply brief, the Court finds that it is in the interests of fairness and justice to address the merits of Plaintiff's argument here.

determines whether a claimant's impairment(s), individually or in combination, are "severe."  20
C.F.R. § 404.1523.  If the ALJ determines that the claimant has a "severe" impairment, the ALJ
must proceed to step three.  Of particular significance here, throughout the remaining steps of the
five-step sequential analysis, the ALJ must consider all of the impairments, both severe and non-
severe.  Social Security Ruling 96-8p, 1996 WL 374184, at *5 ("In assessing RFC, the adjudicator
must consider limitations and restrictions imposed by all of an individual's impairments, even those
that are not 'severe' ").  In *Ottman v. Barnhart*, 306 F.Supp.2d 829 (N.D. Ind. 2004), the Court
concluded that the claimant's assertion that the ALJ committed reversible error at step two was
"unavailing", where the ALJ found some impairments severe but not others and continued through
the five step process.  "As long as a claimant has any severe impairment or combination of
impairments, the ALJ must proceed beyond step two and must consider all of the impairments
(including non-severe impairments) at the remaining steps of the sequential evaluation process,
which in this case, was done." *Id.* at 839.  Here, the ALJ concluded that the Plaintiff suffered from
"severe" impairments, but that her depression and anxiety were not severe.  Therefore, even if this
Court were to agree with the Plaintiff and find her depression and anxiety to be "severe", the
Plaintiff suffered no harm or prejudice *at step two* because the ALJ continued and completed the
five-step sequential analysis.[10]  Because the ALJ found at least one of his impairments to be severe
at step two and completed the five-step evaluation, the Court finds that the ALJ's determination as
to the non-severity of other impairments, assuming *arguendo* that the Court were to conclude those
impairments to be "severe" here, to be harmless error and not grounds for reversal or remand. *Keys*

---

[10]As pointed out by the Commissioner, the Court finds that the Plaintiff's step two severity argument resembles a misplaced RFC argument.

*v. Barnhart*, 347 F.3d 990, 994-95 (7th Cir. 2003) (applying harmless error doctrine in social security case).

The Court now turns to the substance of Plaintiff's amended argument as presented in her reply brief, specifically that the ALJ committed error at steps four and five by not considering Plaintiff's depression and anxiety.  In support, Plaintiff relies on the ALJ's statement that there was "no evidence of a medically determinable mental impairment of any kind in the record", R. at 28, as evidence that the ALJ discounted her depression and anxiety.

While the Court notes the ALJ's poor phraseology, the ALJ's decision clearly demonstrates that he considered the Plaintiff's mental impairments of depression and anxiety at step four.  The ALJ's decision reflects his consideration of Plaintiff's psychotropic medications, including Xanax, Soma, and Elavil.  *See* R. at 27.  Further, the ALJ recounted, in great detail, the findings of Dr. McKian's psychological consultative evaluation, including his diagnosis and GAF score of 52.[11]  In particular, the ALJ found Dr. McKian's results to be "equivocal", and, as a result, determined that there was "no evidence of a medically determinable mental impairment of any kind in the record." R. at 28.

The Court finds that the ALJ's decision demonstrates that he considered all of Plaintiff's alleged impairments (severe and non-severe) together, as required by law, but ultimately found that Plaintiff's depression and anxiety did not substantially affect Plaintiff's ability to work and therefore

---

[11]The Plaintiff argues that the ALJ's decision contains a factual inaccuracy in that Dr. McKian made an Axis I diagnosis and yet the ALJ determined that the Dr. McKian's evaluation "failed to produce any definitive Axis I or II diagnostic impressions."  R. at 27.  While Dr. McKian's diagnostic impressions showed that the Plaintiff "*appear[ed]*" to have an adjustment disorder with "*some* symptoms of anxiety and depression which *seem[ed]* related to her life's situation", R. at 292 (emphases added), the ALJ determined, correctly so in the Court's opinion, that Dr. McKian's evaluation failed to produce a "*definitive* Axis I or II" diagnosis. R. at 27 (emphasis added).  Accordingly, the Court sees no discrepancy between Dr. McKian's tentative diagnostic impressions and the ALJ's view of those impressions.

was not "severe" for the purpose of obtaining SSI.  Further, the Court finds that the ALJ's determination of the severity of Plaintiff's depression and anxiety is supported by substantial evidence in the record.

## B.      Credibility

The Plaintiff argues that substantial evidence does not support the ALJ's credibility finding because (1) the ALJ rejected evidence of Plaintiff's limited activities due to the lack of objective evidence of record, which constitutes error under the regulations; (2) the ALJ improperly relied on limited evidence following Plaintiff's back surgery; (3) the ALJ improperly suggested that the Plaintiff was dependent on MS Contin; and (4) the ALJ did not adequately evaluate Plaintiff's use of medications.  The Court will address Plaintiff's arguments as to the ALJ's credibility finding in turn.

From a general perspective, the Social Security Regulations provide that, in making a disability determination, the Commissioner will consider a claimant's statement about his or her symptoms, including pain, and how they affect the claimant's daily life and ability to work.  *See* 20 C.F.R. § 404.1529(a).  However, subjective allegations of disabling symptoms alone cannot support a finding of disability.  *See id*.  The Regulations establish a two-part test for determining whether complaints of pain contribute to a finding of disability: (1) the claimant must provide objective medical evidence of a medically determinable impairment or combination of impairments that reasonably could be expected to produce the symptoms alleged; and (2) once an ALJ has found an impairment that reasonably could cause the symptoms alleged, the ALJ must consider the intensity and persistence of these symptoms.  20 C.F.R. § 404.1529(a).

18

The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence along with the following factors:

(1)     The individual's daily activities;
(2)     Location, duration, frequency, and intensity of pain or other symptoms;
(3)     Precipitating and aggravating factors;
(4)     Type, dosage, effectiveness, and side effects of any medication;
(5)     Treatment, other than medication, for relief of pain or other symptoms;
(6)     Other measures taken to relieve pain or other symptoms; and
(7)     Other factors concerning functional limitations due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).  In making a credibility determination, Social Security Ruling 96-7P states that the ALJ must consider the record as a whole, including objective medical evidence; the claimant's statement about symptoms; any statements or other information provided by treating or examining physicians and other persons about the conditions and how they affect the claimant; and any other relevant evidence.  *See* Social Security Ruling 96-7P, 1996 WL 374186, at *3-5 ("SSR 96-7P").  An ALJ is not required to give full credit to every statement of pain made by the claimant or to find a disability each time a claimant states he or she is unable to work.  *See Rucker v. Chater*, 92 F.3d 492, 496 (7th Cir. 1996).  However, SSR 96-7P provides that a claimant's statements regarding symptoms or the effect of symptoms on his ability to work "may not be disregarded solely because they are not substantiated by objective evidence."  SSR 96-7P at *6.  An ALJ's credibility determination is entitled to substantial deference by a reviewing court and will not be overturned unless the claimant can show that the finding is "patently wrong."  *Proschaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006).

Here, the ALJ found that the Plaintiff was only partially credible as a witness.  R. at 29.

1.     *Objective evidence in record*

19

Relying on 20 C.F.R. § 419.929 as well as SSR 96-7P, the Plaintiff contends that the ALJ's rejection of Plaintiff's limited activities based on the lack of objective evidence constitutes error.

In assessing her credibility, the ALJ determined that "the clinical evidence provides little if any support for the [Plaintiff's] subjective complaints." R. at 29.

The Plaintiff correctly points out that, pursuant to 20 C.F.R. § 419.929 as well as SSR 96-7P, a court will not reject a claimant's subjective statements regarding the intensity and persistence of pain "solely because the available objective medical evidence does not substantiate [the claimant's] statements." 20 C.F.R. § 419.929(c)(2); *see also* SSR 96-7P at *6 (providing that "allegations concerning the intensity and persistence of pain or other symptoms may not be disregarded solely because they are not substantiated by objective medical evidence"). "However, the absence of objective medical evidence supporting an individual's statements about the intensity and persistence of pain or other symptoms is only one factor that the adjudicator must consider in assessing an individual's credibility and must be considered in the context of all the evidence." SSR 96-7P at *6. Pursuant to 20 C.F.R. § 404.1529(c)(3), an ALJ may consider other factors, which the ALJ did here. For example, pursuant to 20 C.F.R. § 404.1529(c)(3), the ALJ considered other evidence in addition to the objective medical evidence, which, in turn, bolsters his credibility determination. For example, the ALJ found that Plaintiff's daily activities and social functioning, as described to Dr. McKian as well as the Plaintiff's own description of her daily activities, R. at 289-92; R. at 142-52, were inconsistent with a disability finding, s*ee* R. at 29. As discussed in further detail below, *infra* at B.3, the ALJ also considered Plaintiff's use of medications, specifically noting Oxycontin for pain as well as Xanax, Soma, and Elvail for anxiety and depression. In addition, the ALJ "carefully considered the individual's statements about symptoms with the rest of the relevant evidence in the

case record," SSR 96-7P, when he compared the post-surgery findings revealing no complications and classifying the Plaintiff as stable against her subjective complaints of pain. R. at 29. Accordingly, the Court finds that the ALJ did not exclusively rely on objective evidence in making his credibility determination.

2.     *Limited evidence following Plaintiff's back surgery*

The Plaintiff contends that the ALJ committed error by only considering evidence up to six months after her back surgery in May 2003, thus leading to the conclusion that "the clinical evidence provides little if any support" for Plaintiff's subjective complaints of worsening back pain at the lumbar fusion at L4-5. R. at 29. The Plaintiff asserts that the ALJ failed to consider other evidence supporting her subjective complaints of continuing back pain as well as the fact that the Plaintiff took the same dosage level of MS Contin (60 milligrams) before and after her back surgery.

While the Plaintiff alleges that evidence exists in the record of Plaintiff's worsening back pain which the ALJ did not consider, the Plaintiff fails to point to a specific page in the record supporting such. On the contrary, Plaintiff merely makes the following assertion without any citation to the record: "Records show that [the Plaintiff] had been receiving 'active treatment' for her pain condition even up to the time of the hearing." Plaintiff's Opening Brief at 16-17. The Court declines to sift through the record for the alleged instances of "active treatment."

Moreover, even assuming *arguendo* that the Plaintiff provided such citations to evidence in the record, the Court nonetheless finds that the ALJ considered Plaintiff's allegations of post-surgery back pain beyond the initial six-month window because the Plaintiff testified at the July 15, 2003 hearing as to her back pain and the limitations and restrictions stemming therefrom occurring after the surgery and up to and including the date of the hearing. *See* R. at 28 (noting, in the ALJ's

decision, the Plaintiff's testimony that "her back pain is essentially the same as it was before her surgery ...").  In point of fact, the ALJ affirmatively acknowledged the Plaintiff's post-surgery back pain: "Although the claimant underwent back surgery in May 2003, and may have some lingering discomfort from degenerative disc disease, I do not believe her pain and limitations are nearly as severe as she describes them."  R. at 29.  Therefore, the ALJ considered Plaintiff's continuing back pain occurring after her back surgery in his final decision.

3.      *Dependence on MS Contin*

The Plaintiff contends that the ALJ's "suggestion of drug-seeking behavior as evidence of exaggeration of pain is irrelevant absent some showing that the prescription is inappropriate." Plaintiff's Opening Brief at 17.

The Plaintiff cites no authority in support of her assertion that drug-seeking behavior is irrelevant "absent some showing that the prescription is inappropriate."  Moreover, in his decision, while the ALJ noted that the Plaintiff, "by her own admission, has a history of polysubstance abuse", R. at 27, the ALJ explicitly "accept[ed] her allegations to the effect that the condition is currently in a period of sustained remission", R. at 28.  Moreover, even if the ALJ had suspected polysubstance abuse, the ALJ stated that he would not have "considered that usage, or any transitory residuals associated therewith, in [his] further evaluation of the case."  R. at 28.  Accordingly, the Court finds that Plaintiff's argument is without merit.

4.      *Plaintiff's use of medications*

The Plaintiff contends that while the ALJ "mentions" her use of medications in his decision, when evaluating functional limitations, "the ALJ did not evaluate adequately [Plaintiff's] use of these many medicines."  Plaintiff's Opening Brief at 17-18.

The Court finds Plaintiff's argument to be unconvincing.  First, as the Plaintiff admits in her Opening brief, the ALJ discussed and considered Plaintiff's use of medications.  *See* Plaintiff's Opening Brief at 17 ("At the hearing, Myer reported side-effects from her medications such as drowsiness.  The ALJ mentions the use of medicines") (citation omitted).  In particular, the ALJ considered Plaintiff's treatment of pain with narcotic pain relievers, including Oxycontin, as well as the use of psychotropic medications such as Xanax, Soma, and Elavil.  *See* R. at 26, 27. Nevertheless, despite acknowledging as much, the Plaintiff argues that the ALJ's failure to mention other medications constitutes error.[12]  However, an ALJ need not mention every medication documented in the record.  *See Foster v. Barnhart*, No. 1:05-cv-0325-DFH-TAB, 2006 WL 32063273, at *12 (S.D. Ind. May 31, 2006) (citing *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (providing that "an ALJ is not required to provide a complete written evaluation of every piece [of] evidence in the record, as long as his decision demonstrates that he has considered all of the relevant evidence").  While a claimant's use of medications factors into a credibility finding, *see* 20 C.F.R. § 416.929(c)(3)(iv); SSR 96-7P, 1996 WL 374186, at *3, a claimant's medication is only one of several factors to consider in the determination of whether pain is disabling, *see* 96-7P, 1996 WL 374186, at *3 (providing that an ALJ's credibility finding as to an individual's statements should be based on the entire case record, including the objective medical evidence, daily activities, characteristics of the symptoms, aggravating factors, medications, and treatments).  Accordingly, an ALJ's failure to consider some medications does not *per se* require reversal and remand.  And, as demonstrated above, *supra* at B.1, substantial evidence supports the ALJ's credibility determination and thus the Court declines to disturb it here.

---

[12]In particular, the Plaintiff notes the following additional medications not specifically mentioned by the ALJ: Compazine, Dilantin, and Remeron.

*5.      Conclusion*

The Seventh Circuit has long recognized that an ALJ's credibility finding is entitled to considerable deference:   "[B]ecause hearing officers are in the best position to see and hear the witnesses and assess their forthrightness, we afford their credibility determination special deference. We will reverse an ALJ's credibility determination only if the claimant can show it was patently wrong."   *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000) (internal quotations and citations omitted).   Based on the foregoing, the Court finds that Plaintiff failed to establish that the ALJ's credibility finding was "patently wrong."[13]

**C.      Step five**

The Plaintiff argues that the ALJ's step five analysis contains error in that (1) inconsistencies exist regarding the ALJ's skill level; and (2) the ALJ's hypothetical question omitted Plaintiff's age and educational level.   Finally, the Plaintiff argues that her two prior applications for SSI should be reopened because the instant case (Plaintiff's third application) is within twelve (12) months of notice of the initial denials of the prior applications.

*1.      Inconsistencies regarding Plaintiff's skill level*

The Plaintiff contends that the ALJ erred because while he found that the Plaintiff had "no transferable skills from any past relevant work", R. at 30, according to the Plaintiff, "the [VE] assumed that a person had 'transferable skills' when he identified work as a retail sales clerk and [an] order taker", Plaintiff's Opening Brief at 18-19.   In response, the Commissioner asserts that if the Plaintiff had any question with regard to the VE's testimony, she should have raised it at the

---

[13]At the beginning of her credibility argument in her Opening brief, Plaintiff discusses two standards of review for an ALJ's credibility determination.   However, the Plaintiff does not pursue the issue by demonstrating, or even stating, which standard of review should apply.

hearing.  In reply, the Plaintiff argues that the ALJ failed to ask the VE questions about possible conflicts with the Dictionary of Occupational Titles ("DOT")[14], as required by SSR 00-4p.[15]

As a threshold point, the Court declines to consider Plaintiff's argument as to SSR 00-4p because the Plaintiff raised the issue for the first time in her reply brief and it is well-settled law that a party waives or forfeits an argument raised for the first time in a reply.[16]  *See Kendrick v. Barnhart*, No. 1:04CV0292DFHTAB, 2005 WL 1025777, at *12 (S.D. Ind. Apr. 18, 2005) (providing that "[i]ssues or requests raised for the first time in a reply brief are deemed waived") (citations omitted).[17]

As to the substance of Plaintiff's argument, the Plaintiff fails to articulate and support her proposition that the VE assumed an individual with "transferable skills" when he identified jobs as a retail sales clerk and an order taker.  Regardless, the Plaintiff only asserts that the alleged

---

[14]The DOT, which is published by the Department of Labor, gives detailed physical requirements for a variety of jobs.  The SSA has taken "administrative notice" of the DOT.  *See* 20 C.F.R. § 416.966(d)(1).

[15]SSR 00-4p provides, in relevant part:

> When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT. In these situations, the adjudicator will:
> Ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and
> If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

SSR 00-4p, 2000 WL 1898704, at *4.

[16]While the Plaintiff cites to SSR 00-4p in her Opening Brief, the Plaintiff does not argue that the ALJ failed to follow this Ruling; instead, the Plaintiff merely cites SSR 00-4p in order to show the classification of jobs for unskilled, semi-skilled, and skilled work.  *See* Plaintiff's Opening Brief at 19.

[17]Nevertheless, the Court notes that the ALJ complied with SSR 00-4p in the following exchange with the VE at the July 13, 2005 hearing: "Q[uestion]: Okay. Mr. Grzesik, you're going to testify in accordance with the information contained in [the DOT].  If there is a difference between your testimony and the information in those sources, you're going to let us know, correct?  VE: Yes."  R. at 456.

inconsistency between the ALJ's finding of no transferable skills and the VE's assumption that the individual in the hypothetical possessed transferable skills affects the jobs of retail sales clerk and order taker, which require a specific vocational preparation[18] ("SVP") of 3 and 4, respectively. Thus, even if this Court were to endorse Plaintiff's reading of the ALJ's opinion and the VE's hypothetical question, the Plaintiff would still be able to perform work as a cashier, of which, according to the VE, 28,000 jobs exist in the regional economy.

2.      *ALJ's hypothetical question*

The Plaintiff contends that the ALJ's omission of her age and educational level from the hypothetical question posed to the VE constitutes an incomplete hypothetical question and thus substantial evidence does not support the ALJ's step five determination.   In response, the Commissioner points out that the VE attended the July 13, 2005 hearing and thus was aware of the Plaintiff's age and educational level.

At the July 13, 2005 hearing, the VE appeared and testified.  *See* R. at 411, 413 (noting that VE Thomas Grzesik appeared); *see generally*, R. at 456-60 (testimony of the VE).  At the beginning of his testimony, the VE testified that Plaintiff's past relevant work included that of a waitress and a commercial cleaner; such a statement reflects the VE's familiarity with the record, which included countless references to Plaintiff's age and educational background.  Accordingly, the Court finds that despite the ALJ's failure to specify Plaintiff's age and educational background in his hypothetical question to the VE, the VE's testimony and appearance at the hearing demonstrates his review of the record and familiarity with Plaintiff's age and educational background, which cures

---

[18]SVP is defined as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation."  *Dictionary of Occupational Titles* (4th rev. ed. 1991), *Appendix C*.

any defect in the ALJ's hypothetical question. *See Ragsdale v. Shalala*, 53 F.3d 816,  (7th Cir. 1995) (noting that the Seventh Circuit, among other circuits, has concluded that "an incomplete hypothetical question may be cured by a showing that prior to testifying the vocational expert reviewed the claimant's record containing the omitted information"); *Willits v. Shalala*, No. 3:93-CV-738RP, 1995 WL 358796, at *18 (N.D. Ind. May 23, 1995) (finding no error in the ALJ's hypothetical question to the VE, specifically as to relating to claimant's job capacity and physical and mental impairments, where "the record clearly shows that the [VE] had reviewed the file and had been present throughout [the claimant's] testimony"); *Mote v. Shalala*, No. 2:94-cv-420RP, 1995 WL 358636, at *15 (N.D. Ind. May 12, 1995) (providing that "while the ALJ's hypothetical [wa]s not as detailed as it could be, the vocational expert's response demonstrates that his review had been a thorough one, and that through his attendance at the hearing he was keenly aware of [the plaintiff's] alleged impairments").

*3.*      *Reopening*

The Plaintiff argues that her two prior applications for SSI be reopened, pursuant to 20 C.F.R. § 1488(d)(1).

The Plaintiff filed for SSI on July 18, 2001 (first application), which was denied initially on January 3, 2002.  The Plaintiff then filed again for SSI on April 9, 2002 (second application), which was denied initially on July 15, 2002.

Pursuant to 20 C.F.R. § 1488(d)(1), entitled "Conditions for reopening", "[a] determination, revised determination, decision, or revised decision may be reopened–(a) Within 12 months of the *date of the notice of the initial determination*, for any reason ... ."  20 C.F.R. § 1488(d)(1) (emphasis added).  Here, Plaintiff's first and second applications for SSI were denied on the dates of January

27

3, 2002 and July 15, 2002, respectively.  R. at 33, 34.  Accordingly, based on the Court's plain reading of the regulation, Plaintiff's window to reopen her first and/or second applications pursuant to 20 C.F.R. § 1488(d)(1) has long since closed.[19]

## CONCLUSION

Based on the foregoing, the Court finds the ALJ's decision to be supported by substantial evidence and free of error.  Therefore, the Court **DENIES** the Opening Brief of Plaintiff in Support of her Complaint [DE 14] to the extent that the Plaintiff seeks reversal and remand of the instant case.  The Court **REAFFIRMS** the ALJ's decision in all respects.

SO ORDERED this 2nd day of July, 2007.

/s Paul R. Cherry_____
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:     All counsel of record.

---

[19]The Plaintiff argues that because she filed the instant application for SSI on December 2, 2002, within 12 months after the denial of her previous two claims, she is within the 12-month window.  However, her filing on December 2, 2002 was another application for SSI, not a request to reopen her prior applications.  Moreover, this Court most likely lacks jurisdiction to make such a determination.  *See Bolden ex rel. Bolden v. Bowen*, 868 F.2d 916, 918 (7th Cir. 1989) (citing *Califano v. Sanders*, 430 U.S. 99 (1977) (finding that a decision to reopen is not reviewable)).